## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| FINANCIAL PACIFIC LEASING, INC.    ) | |
|                       ) | |
|      Plaintiff,          ) | |
|                       ) | |
| v.                         ) | Case No.: 2:14-cv-134 |
|                       ) | |
| BLACKWATER TRANSPORT, INC.,  ) | |
| MILES WHITE, III, and        ) | |
| DONNA WHITE,             ) | |
|                       ) | |
|      Defendants.       ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Financial Pacific Leasing, Inc.'s ("Financial Pacific") Motion for Default Judgment, ECF No. 6, which was referred to the undersigned United States Magistrate Judge pursuant to a Referral Order from the Chief United States District Judge, ECF No. 11; *see also* 28 U.S.C. §§ 636(b)(1)(B); Federal Rule of Civil Procedure 72(b); Eastern District of Virginia Local Civil Rule 72. The Defendants Blackwater Transport, Inc., Miles White, III, and Donna White (collectively, the "Defendants"), though properly served, have failed to respond to Financial Pacific's Complaint. Accordingly, Financial Pacific now seeks entry of default judgment and monetary damages. For the reasons discussed below, the undersigned recommends that the Court **GRANT** Financial Pacific's Motion for Default Judgment, ECF No. 6.

## I. FACTUAL AND PROCEDURAL HISTORY

Financial Pacific filed its Complaint against the Defendants on April 1, 2014, alleging breach of contract claims against all Defendants and a petition in detinue against Blackwater

Transport. ECF No. 1 at 5-8.  Having failed to enter an appearance or otherwise file a responsive pleading, the Clerk entered default as to all Defendants on June 26, 2014.  ECF No. 8.  After referral, the undersigned conducted an evidentiary hearing on October 15, 2014, at which Miles White, III and Donna White ("Mr. and Mrs. White") appeared.  The undersigned advised Mr. and Mrs. White of the posture of the proceedings, but with no pending motion by either Mr. or Mrs. White to set aside the entry of default, the undersigned conducted the evidentiary hearing.[1] The purpose of the evidentiary hearing was for Financial Pacific to submit additional evidence substantiating its Motion for Default Judgment.  Instead, at the hearing, Financial Pacific relied on the evidence previously submitting which included only two affidavits and the attorneys' billing records.  ECF No. 6, attachs. 1-2.  This evidence, however, was wholly inadequate for the undersigned's determination of the appropriateness of default as the affidavits only conclusorily averred to the total money damages and failed to provide any documentary support substantiating how those damages were calculated.  *See, e.g., Int'l Painters & Allied Trades Indus. Pension Fund v. Dettrey's Allstate Painting, LLC,* 763 F. Supp. 2d 32, 36 (D.D.C. 2011) (denying without prejudice a motion for default judgment because the plaintiffs failed to give details as to how the damages were calculated).  Accordingly, after Financial Pacific failed to proffer any additional evidence at the evidentiary hearing, the undersigned directed Financial Pacific to file supplementary evidentiary submissions.  ECF No. 13.  Financial Pacific timely complied with the undersigned's Order, submitting additional documentation and affidavits. ECF Nos. 14, 15.  Accordingly, this matter is ripe for recommended disposition.

## II.  RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 55(a), default is appropriate when a defendant has failed to plead or otherwise defend against an action.  Upon request of the party

---

[1] To date, Mr. and Mrs. White have yet to move to set aside the entry of default or otherwise enter an appearance.

2

entitled to default, the court may enter against a defendant a default judgment for the amount claimed and costs of the action. Fed. R. Civ. P. 55(a). The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Thus, default judgment is only available when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Although default judgment conclusively establishes the defaulting party's admission to the allegations contained in the complaint, *Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003), default does not establish liability for the amount claimed by the plaintiff, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Rather, the court must determine if the well-pleaded allegations in the complaint support the entry of default judgment. *Id.* Accordingly, the court must consider whether the complaint establishes the defendant's liability and then determine the amount of damages. *See id.* ("[A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.") (citations omitted). It is for this reason that after considering the defendant's liability, "[t]he court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages." *E.E.O.C. v. Carter Behavior Health Servs.* No. 4:09-cv-122, 2011 WL 5325485, at *4 (E.D.N.C. Oct. 7, 2011). Thus, it is incumbent on the moving party "to provide the court with sufficient information to ascertain monetary damages with reasonable certainty." *Int'l Painters & Allied Trades Indus. Pension Fund,* 763 F. Supp. 2d at 36. Moreover, the court "has considerable latitude in determining the *amount* of damages." *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993) (citing *Sony Corp. v.*

*Elm State Elecs., Inc.*, 800 F.2d 317, 321 (2d Cir. 1986) (emphasis in original).

### A. Jurisdiction and Venue

This Court has subject-matter jurisdiction as a result of complete diversity among the parties and an amount in controversy exceeding $75,000.00.  28 U.S.C. § 1332.  Financial Pacific is a Washington corporation with its principal place of business in Washington, while Defendant Blackwater Transport, Inc. is a Virginia corporation with its principle place of business in Franklin, Virginia, and Defendants Mr. and Mrs. White are citizens of Virginia.  ECF No. 1 at 2.  Personal jurisdiction is proper as all Defendants reside in Franklin, Virginia, which is located within the Eastern District of Virginia, Norfolk Division, and were properly served.  ECF No. 4.  Venue is proper in the Eastern District of Virginia, Norfolk Division.  28 U.S.C. § 1391(b).  Mr. and Mrs. White are not active members of the United States Armed Forces.  ECF No. 14, attachs. 5-6.

### B. Defendants' Liability

Financial Pacific asserted two general claims in its Complaint: a breach of contract claim against all Defendants and a petition in detinue against Blackwater Transport.  ECF No. 1 at 5-8. To establish the Defendants' liability and resulting damages, Financial Pacific proffered the Lease Agreement between Financial Pacific and the Defendants, ECF No. 1, attach. 1, along with the affidavit of Jessica Bailey, a Loss Recovery Agent at Financial Pacific, who averred to the outstanding agreement, the payment history of the Defendants, and proffered supporting documentation.  ECF No. 14.  Moreover, Financial Pacific proffered the affidavit of Jeremy S. Friedberg ("Mr. Friedberg") of Leitess Friedberg PC ("LFPC"), the firm representing Financial Pacific, who proffered the attorneys' billing records.  ECF No. 15.

### 1. Breach of Contract Claim

To succeed on a claim for breach of contract under Virginia law, Financial Pacific must prove (1) a legal obligation of each Defendant to Financial Pacific; (2) a violation or breach of that obligation; and (3) resulting damage to Financial Pacific. *See Caudill v. Wise Rambler*, 168 S.E. 2d 257, 259 (Va. 1969). Under Virginia Code § 8.01-27, a civil action may be maintained "upon any note or writing by which there is a promise, undertaking, or obligation to pay money," so long as the writing is signed by the party to be charged or its agent. Va. Code Ann. § 8.01-27. Moreover, a Virginia cause of action for breach of contract is subject to a five-year statute of limitations period, which begins to run from the date the breach occurs. *Id.* § 8.01-246(2).

Financial Pacific sufficiently established the Defendants' liability on the breach of contract claim in its evidentiary submissions. In support of the first element of a breach of contract claim, Financial Pacific submitted the Lease Agreement, which clearly specified the terms and conditions of the agreement. ECF No. 1, attach. 1. The Lease Agreement was originally executed between Capital Funding, Inc. and the Defendants; thereafter, the Lease Agreement was assigned to Financial Pacific from Capital Funding, *id.*, attach. 2, and Financial Pacific preserved its interest in the Lease Agreement by filing the appropriate Financing Statement with the Virginia State Corporation Commission, *id.*, attach. 3. Although the Lease Agreement is primarily between Financial Pacific and Defendant Blackwater Transport, Inc., Mr. and Mrs. White agreed to serve as guarantors for the agreement, and signed and dated the Lease Agreement on June 28, 2012. *Id.*, attach. 1 at 2. To support the second element for its breach of contract claim, Financial Pacific proffered the Payment History on the Lease Agreement, which indicated that the last payment was made on December 15, 2013, ECF No. 14, attach. 1 at 3, and that Financial Pacific notified the Defendants on February 28, 2014 by certified mail of the

5

delinquent status of the Lease Agreement, ECF No. 1, attach. 4. Finally, to substantiate its resulting damages from the Defendants' failure to pay on the Lease Agreement, Financial Pacific submitted a Buyout Quote that specifies the remaining balance on the lease agreement totaling $85,603.90, ECF No. 14, attach. 1, an invoice of unpaid sales taxes totaling $5,136.27, *id.*, attach. 2, an invoice of unpaid personal property taxes and miscellaneous fees in the amount of $2,980.63, *id.*, attach. 3, and an invoice of the late charges billed to Financial Pacific totaling $1,983.50, *id.*, attach. 4.[2] Such evidence substantiates the damages sought.

In support of Financial Pacific's request for attorneys' fees in the amount of $15,386.00, and costs of $1,053.57, Financial Pacific submitted the affidavit of Mr. Friedberg, who proffered LFPC's billing records. ECF No. 15 (the "revised fee request"). Two attorneys billed on this case, Steven N. Leitess, and Gordon S. Young, along with one paralegal, Dapo R. Lawal. ECF No. 15, attach. 2.

To calculate an appropriate attorneys' fees award, the Court evaluates the reasonableness of attorneys' fees by comparing the requested amount to the lodestar amount, which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). In determining what constitutes a reasonable number of hours and rate, the Court looks to the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorney's fees awards in similar cases.

---

[2] In its Motion for Default Judgment, Financial Pacific indicated that late charges totaled $939.55, but provided no evidentiary support for that figure. ECF No. 6, attach. 1 at 5. Upon providing supporting documentation, Financial Pacific indicated that late charges now total $1,983.50. ECF No. 14 at 4.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).[3]  In calculating the lodestar amount, "the court need not address in detail every single one of these factors." *Dollar Tree Stores, Inc. v. Norcor Bolingbrook Assocs.*, 699 F. Supp. 2d 766, 768 (E.D. Va. 2009).

The undersigned has considered the *Johnson* factors, Mr. Friedberg's affidavit, and the attendant billing records, and finds that the hourly rates sought are reasonable in relation to the experience of the attorneys and paralegal.  Mr. Friedberg averred to the experience and qualifications of Gordon S. Young, a partner with LFPC who has been practicing for more than fourteen years, and Dapo R. Lawal, a paralegal with more than eight years' experience. ECF No. 15 at 4.  Although Mr. Friedberg failed to provide any information as to the experience of Mr. Steven N. Leitess, who is apparently a partner with LFPC, the undersigned determines that his rate is reasonable as the "specific evidence of counsel's actual billing practice" may be evidence of the rates' reasonableness.  *See Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987). Although LFPC's rates are reasonable, the undersigned finds that LFPC should not be permitted to recover its attorneys' fees incurred in settlement negotiations.

Previously, when Financial Pacific moved for default judgment, Financial Pacific requested attorneys' fees in the amount of $5,027.50[4] and costs in the amount of $457.46.  ECF

---

[3] These factors are sometimes referred to as "the *Johnson* factors," as they were first expressed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

[4] Although Financial Pacific indicated that it was requesting $4,501.00 in attorneys' fees at the time it moved for default judgment, ECF No. 6 at 2, per the undersigned's calculation of the billing records submitted in the original Motion for Default Judgment and attendant billing records, Financial Pacific's total fee at that time it moved for default judgment was $5,027.50. Financial Pacific did not indicate that it was voluntarily reducing its fees so the apparent discrepancy between the total requested amount in the motion, ECF No. 6 at 2, and the billing records, *id.*, attach. 2, is unexplained. However, in its revised attorneys' fee request, Financial Pacific apparently includes the full amount of $5,027.50, as opposed to $4,501.00, as the same invoices previously submitted in the original fee request are still included in the revised fee request, and without the higher amount, there is no way to calculate the total requested amount of $15,386.00. Accordingly, the undersigned interprets the previous discrepancy to be a clerical error and, when discussing what the original fee request sought, will use the amount of $5,027.50.

No. 6 at 2 (the "original fee request"). However, upon finding Financial Pacific's evidentiary submissions lacking, the undersigned directed Financial Pacific to submit more detailed affidavits and/or supporting documentation. ECF No. 13. Importantly, though, the undersigned specifically "note[d] that Financial Pacific ha[d] sufficiently substantiated its claim for attorneys' fees" and did not direct additional evidence on that request. *Id.* at 3. Thereafter, Financial Pacific submitted a new affidavit by Mr. Friedberg averring that the attorneys' fees the litigation now totaled $15,386.00, and the costs were $1,053.57. ECF No. 15 at 2. The striking increase in attorneys' fees is not just attributable to the undersigned's required additional submissions. Indeed, Financial Pacific included months of work not previously included in the Motion for Default Judgment. *Compare* ECF No. 6, attach. 2 at 17 (listing the last billing entry dated on May 12, 2014), *and* ECF No. 15, attach. 2 at 8-23 (including billing entries dated from May 16, 2014 to October 28, 2014). It is appropriate that Financial Pacific included attorneys' fees and costs incurred while substantiating its damages request, per the undersigned's Order, which totaled $2,321.50 in fees, *id.* at 21-22 (including all billing entries, except that dated October 10, 2014, as time spent preparing for the evidentiary hearing or substantiating the damages request), and costs of $236.42, *id.* at 22 (including travel costs for the evidentiary hearing). Moreover, some time included in the revised fee request should have been included in the original fee request. *See id.* at 8-9 (listing $313.00 in attorneys' fees spent on matters related to the Motion for Default Judgment on or before May 21, 2014, and $347.58 in costs for service of the Motion). Thereafter, between May 30, 2014 and October 10, 2014, LFPC billed $7,724, the predominant amount of which was incurred in settlement negotiations; however, some of the fees subsumed in this amount included entries unrelated to the settlement negotiations. *See id.* at 8, 10, 11, 14, 17, 19 (entries by the paralegal); *id.*, at 10, 14, 17, 19 (entries by Mr. Young on

matters regarding the stay, preparation for the hearing, and review of the certificate of service on the Motion for Default Judgment).   Subtracting, then, this time spent on other matters, the amount of fees requested related solely to the settlement negotiations is $6,169.00.

In *Citicorp U.S.A., Inc. v. Edwards*, the Fourth Circuit upheld a magistrate judge's denial of attorneys' fees for pre-litigation negotiations. 118 F. App'x 698, 700-02 (4th Cir. 2004).   The magistrate judge denied these particular fees on the grounds that "it is reasonable to award attorneys' fees related to reasonable efforts to enforce the agreements by filing suit and prosecuting it," but to award fees for negotiation "would be excessive." *Id.* at 700.   Here, the Lease Agreement provided that the defaulting party would be liable for all "attorney's [sic] fees that [Financial Pacific] has[s] to pay to *enforce* this Lease . . . in any lawsuit or other legal proceeding which we are required to bring or defend because of your default." ECF No. 1, attach. 1 at 4 (emphasis added).   Settlement negotiations, even those occurring after the initiation of the lawsuit, do not fall under the umbrella of "enforcement" of the agreement.   Indeed, settlement negotiations by their very nature alter the original agreement, resulting in terms often different and unique from the original agreement. *See Banca Della Svizzera Itliana v. Cohen*, 756 F. Supp. 805, 809 (S.D.N.Y. 1991) (denying attorneys' fees for settlement negotiations after the initiation of the suit because "negotiations in pursuit of a settlement whereby the parties agree to a restructuring of the payments are not so much the enforcement of the original rights as a reformulation of those rights in a new agreement.").   Thus, looking at the very language of the Lease Agreement, it did not contemplate settlement negotiations as part of the package award of attorneys' fees.

Even assuming arguendo that Financial Pacific could be entitled to the fees incurred in

9

settlement negotiations under the catch-all provision of the Lease Agreement,[5] the fees incurred in the settlement negotiations are unreasonable. The fees allotted to settlement negotiations approximate 40% of the total fees sought by Financial Pacific. Moreover, such a large fee award totaling $15,386.00, if the time for settlement negotiations were included, would be incongruous to awards granted in similar suits involving some of the same attorneys as billed in the present case. *See SL Fin. Servs. Corp. v. Woodberry Graphics, LLC*, No. WDQ-13-1661, 2013 WL 5530642, at *5 (D. Md. Oct. 3, 2013) (recommending an award of $6,961.75 in attorneys' fees and $667.76 in costs), *adopted in full*, No. 13-166-WDQ, slip op. at 1-2 (D. Md. Oct. 25, 2013); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09CV00004, 2009 WL 1872535, at *2 (W.D. Va. June 20, 2009) (awarding $4,070.50 in attorneys' fees and $619.15 in costs). Accordingly, the undersigned considers the fees incurred in settlement negotiations to be unreasonable and not recoverable by Financial Pacific. Financial Pacific should be permitted to recover its original fee request in the amount of $5,027.50 and costs in the amount of $457.46, and an additional $4,189.50 in fees and $595.91[6] in costs, which included matters related to responding to this Court's Order and matters unrelated to settlement negotiations, resulting in a total amount of $9,217.00 in attorneys' fees and $1,053.37 in costs.

### 2. Detinue Claim

Additionally, Financial Pacific seeks possession of the Equipment that was the subject of the Lease Agreement, as the Complaint included a petition in detinue for seizure of the Equipment against Blackwater Transport. Under Virginia law, "[a]n action for detinue lies when

---

[5] Financial Pacific "shall be entitled to recover its reasonable attorneys's [sic] fees and costs" related to "a dispute . . . arising out of this Lease." ECF No. 1, attach. 1 at 4.
[6] Financial Pacific indicated that its costs since its original fee request were $596.11, *compare* ECF No. 6, attach. 1 at 5 (original request of $457.46 in costs), *with* ECF No. 15 at 2 (revised request of $1,053.57); however, per the undersigned's calculation, the revised cost are $595.91, *see id.*, attach. 1 at 9 (costs of $347.58); at 19 (costs of $11.91); at 22 (costs of $236.42).

a party unlawfully withholds the personal property of another." *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d. 593, 620 (E.D. Va. 2005). To successfully prove a detinue claim and re-acquire the specific personal property at interest, the plaintiff must show five elements:

> (1) [t]he plaintiff must have property in the thing sought to be recovered; (2) he must have the right to its immediate possession; (3) it must be capable of identification; (4) the property must be of some value, and (5) the defendant must have had possession at some time prior to the institution of the action.

*Vicars v. Atlantic Discount Co.*, 140 S.E.2d 667, 670 (Va. 1965). The Equipment leased from Financial Pacific to Blackwater Transport included a "2002 Tigercat 720D" and a "Tigercat Saw – Model 5501." ECF No. 1, attach. 1 at 2. The Equipment has a fair market value of $34,000.00. ECF No. 14 at 6. As the instant agreement is a lease, rather than a sale, Financial Pacific retained rights to the Equipment. Indeed, the Lease Agreement explicitly stated that Financial Pacific was "the owner of and ha[s] title to the Equipment," ECF No. 1, attach. 1 at 3, and that upon Blackwater Transport's default, Financial Pacific could require the return of the Equipment, *id.* at 4. Moreover, Financial Pacific alleged that Blackwater Transport currently retains possession of the Equipment, notwithstanding Financial Pacific's request for its return. ECF No. 1 at 8. Accordingly, Financial Pacific has demonstrated each of the five elements necessary to succeed on its detinue claim, and Financial Pacific's petition in detinue should therefore be granted.

## III. RECOMMENDATION

In conclusion, the undersigned **RECOMMENDS** that the Court **GRANT** Financial Pacific's Motion for Default Judgment, ECF No. 6, and that default judgment be entered in favor of Financial Pacific in the amount of $95,704.30 plus post-judgment interest accruing at the legal rate as calculated pursuant to 28 U.S.C. § 1961. Financial Pacific should also be awarded $9,217.00 in attorneys' fees and $1,053.37 in costs. Additionally, the Clerk of the Court should

be directed to issue a writ of possession, authorizing the United States Marshal to seize the Equipment from Blackwater Transport and deliver the same to Financial Pacific.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this report and recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The Chief United States District Judge shall make a de novo determination of those portions of this report and recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this report and recommendation to the Defendants and counsel of record for the Plaintiff.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
January 5, 2015

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. Jeremy S. Friedberg
Mr. Gordon S. Young
Leitess Friedberg PC
10451 Mill Run Circle, Suite 1000
Baltimore, Maryland 21117
Counsel for the Plaintiff

Mr. Miles White, III
33278 Vicksville Road
Franklin, Virginia 23851
Non-Appearing Defendant

Mrs. Donna White
33278 Vicksville Road
Franklin, Virginia 23851
Non-Appearing Defendant

Black Water Transport, Inc.
c/o P. Daniel Crumpler, III, Esq., Resident Agent
219 North Main Street
P.O. Box 976
Franklin, Virginia 23851
Non-Appearing Defendant

Fernando Galindo,
Clerk of the Court

By: _____/S/_____

Deputy Clerk
January 5 , 2015